**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: GADOLINIUM-BASED ) | Case No.  1:08 GD 50000 |
| CONTRAST AGENTS PRODUCTS ) | |
| LIABILITY LITIGATION ) | MDL No. 1909 |
| ) | |
| ) | **Judge Dan Aaron Polster** |
| ) | |
| ) | |
| **JEFFREY GATANO,** ) | |
| ) | Case No. 1:09 gd 50084 |
| - against - ) | |
| ) | |
| **GENERAL ELECTRIC CO., et al.,** ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |

On March 4, 2009, Plaintiff Jeffrey Gatano filed this action against the General Electric Defendants (or "GE"), the Bayer Defendants, the Bracco Defendants and Mallinckrodt Inc. in the United States District Court, Eastern District of Pennsylvania.[1]  (Doc #: 1.)  Plaintiff, who suffers from severe renal insufficiency, alleges that he was administered gadolinium-based contrast agents ("GBCA") manufactured by the GE Defendants (Omniscan), the Bayer Defendants (Magnevist), the Bracco Defendants (ProHance and/or MultiHance), and Mallinckrodt (Optimark), in connection with MRIs taken at the Hospital of the University of

---

[1]The General Electric Defendants are comprised of General Electric Co., GE Healthcare, Inc., GE Healthcare AS and Nycomed Int'l Management GmbH.  The Bayer Defendants are comprised of Bayer Healthcare Pharmaceuticals, Inc., Bayer AG and Bayer Schering Pharma, AG. The Bracco Defendants are comprised of Bracco Diagnostics Inc., Bracco Research USA, Inc. and Altana Pharma AG.

Pennsylvania ("the Hospital") on March 22, 1990, January 23, 1992, March 3, 1998, March 11, 1998, March 17, 1998 and August 15, 2006. (Id. ¶ 57.) Plaintiff alleges that he began experiencing the symptoms of Nephrogenic Systemic Fibrosis ("NSF") after, and because of, the GBCA administrations, and that he was diagnosed with NSF in or around September 2007. (Id. ¶¶ 56, 58.) As a result, Plaintiff asserts product liability claims, warranty claims, tort claims, and intentional tort claims against the Defendants. (See id. ¶¶ 69-105.)

On April 16, 2009, the case was transferred to MDL No. 1909 for pretrial management in this district court. (Doc #: 5.) On March 18, 2010, following a Large Group Conference and repeated pressure by GE to dismiss Mr. Gatano's claims against it,[2] the Court ordered Plaintiff to either provide evidence of Omniscan exposure by May 17, 2010 or voluntarily dismiss the GE Defendants. (Doc #: 23 at 1.) Plaintiff subsequently filed a Motion for Extension of Time to Establish Exposure to Omniscan asserting that the Hospital sent him "the record of a gadolinium-enhanced MRA for the first time on Friday, May 7, 2010." (Id. at 1.) Further, "this newly discovered January 11, 1999 MRA is the only known GBCA scan that took place before Plaintiff developed NSF. This is the sole known causal scan." (Id.) Upon this discovery, Plaintiff immediately asked the Hospital to identify the brand of GBCA that was administered. (Id. at 2.) Based on information learned from the facility in other cases, it appeared to Plaintiff that the GBCA administered to him on January 11, 1999 was more likely than not Omniscan. (Id.) Because the discovery of the scan was recent, however, there was not enough time for the Hospital to produce documents or other information confirming this fact. (Id.)

---

[2]See Doc #: 36, at 9 (". . . GE requested dismissal on October 31, [2009,]November 18, [2009,] December 2, [2009,]and March 12, 2010.

-2-

After reviewing this Motion, GE's opposition brief (Doc #: 24) and Plaintiff's reply (Doc #: 27), the Court issued an Order. (Doc #: 30.) The Court granted Plaintiff an extension of time to July 16, 2010 to submit proof that Omniscan was administered to Plaintiff in the January 11, 1999 MRA, or the Court would dismiss the claims against the General Electric Defendants. (Id.)

The docket reflects that nothing further was filed in this case until October 29, 2010, when the GE Defendants filed a "Notice of Filing" seeking dismissal of Plaintiff's claims against them. (Doc #: 31.) The GE Defendants noted that they had attended a 30(b)(6) deposition of the Hospital on October 13, 2010, in order to resolve product identification. (Id. at 2.) According to GE, deponent Mary McGrath testified that she was unable to confirm that the Hospital purchased any GBCA exclusively, and she could not rule out exposure to any GBCA for the scans at issue. (Id.) The GE Defendants asked the Court to enforce its prior order and dismiss them from this case. (Id.)

Plaintiff filed an opposition brief with the sworn affidavit of Beverly Farrar. (Doc #: 34-1.) Farrar, the Supervisor for the Magnetic Resonance Imaging Division of the Radiology Department at the Hospital since 1986, avers that it is her belief that it is "more likely than not that the gadolinium based contrast agent used during Mr. Gatano's January 11, 1999 MRA was Omniscan." (Id. ¶ 7.) As the basis for her sworn conclusion, Farrar avers:

> On November 10, 2010, I entered the date of "1/11/99" in the PAC (patient archiving and communication) system. This search generated a list of all studie[s] performed at [the Hospital] on January 11, 1999. Mr. Gatano's was one of many studies performed on that date. Although there was no indication what brand of gadolinium based contrast agent was used for Mr. Gatano's study, four (4) other patients who had MR imaging with contrast performed on January 11, 1999 received Omniscan, and this information was noted in the PAC system. When gadolinium based contrast agents first came on the market, there was only one brand available, Magnevist. At some point in time, [the Hospital] changed its use of gadolinium based contrast agents from Magnevist to Omniscan. Because

-3-

> Omniscan was identified as the gadolinium based contrast agent used for those four (4) other patients undergoing MR studies on January 11, 1999, it is my belief that Omniscan was the contrast agent being used for all MR studies at [the Hospital] as of January 1999.

(Id. ¶ 8.)  Plaintiff argues that, although the GE Defendants have violated the CMOs by failing to serve a Defendant Fact Sheet ("DFS"), Farrar's conclusion is consistent with GE's representation in at least three other cases (where GE has filed a DFS and the plaintiffs are represented by the same counsel that represent Gatano) that GE sold Omniscan to the Hospital in January 1999.  (Doc #: 34 at 4.)

Plaintiff also set forth in detail the many efforts undertaken to find this critical information from the Hospital and the obstacles the Hospital placed in its path.  On June 6, 2008, Plaintiff's counsel requested imaging reports for all procedures performed on Mr. Gatano with contrast from January 1, 1989 through the date of the request.  (Doc #: 34-5 at 4.)  In response, the Hospital provided imaging reports for four non-MR scans.  (Id.)  On July 11, 2008, Plaintiff's counsel requested Mr. Gatano's entire medical and billing records for all dates of service from Dr. Shawn J. Bird, MD.  (Id. at 5.)  In response, the Hospital provided six pages of medical records that did not include the January 1999 MRA.  (Id.)  On July 16, 2008, Plaintiff's counsel requested a list of all dates of service with a diagnosis for any and all services beginning January 1, 1996 through the date of the request.  (Id.)  In response, the Hospital provided two discharge reports showing diagnoses: one a discharge report on March 20, 1998 and another discharge report on April 17, 1998, both predating the January 1999 MRA.  On April 16, 2009, Plaintiff requested all treatment and billing records.  (Id. at 6.)  On April 23, 2009, the Legal Coordinator at the Hospital responded that no billing was available because the hospital did not have any dates of service for Mr. Gatano, which was certified on June 17, 2009.  (Id.)  On

September 15, 2009, Plaintiff's counsel served a subpoena on the Hospital seeking documents and deposition testimony sufficient to identify the GBCAs Plaintiff was administered at the Hospital, and medical records. (Id.) On January 21, 2010, Plaintiff made his sixth request for billing records for his treatment there. (Id.) On January 28, 2010, the Legal Coordinator certified that there were no dates of service for Mr. Gatano, and the Hospital could not retrieve bills more than seven years old. (Id. at 6-7.) Consequently, Plaintiff's counsel reasonably concluded that Mr. Gatano had not been administered a GBCA at the Hospital before he first manifested symptoms of NSF in late 1999. (Id. at 7.)

Meanwhile, in late 2009, the Hospital's counsel identified, <u>in a different NSF case</u>, Beverly Farrar, Supervisor for the Radiology Department's Magnetic Resonance Imaging Division, as the person most knowledgeable about GBCA product identification. (Id.) Thereafter, counsel for GE and other Plaintiffs sought to take Ms. Farrar's deposition, but the Hospital failed or refused to produce her for deposition despite subpoenas requiring her attendance. Rather, on April 29, 2010, the Hospital provided Plaintiff with Ms. Farrar's affidavit which identified a GBCA-enhanced MR scan that took place at the Hospital on January 11, 1999. (Doc #: 35-9 at 3.) The radiology report for the scan, produced on May 7, 2010, did not identify the GBCA manufacturer. (Doc #: 34-5 at 8.) That day, Plaintiff served on Defendants an amended Plaintiff Fact Sheet with this newly discovered scan. (Id.) Plaintiff thereafter sought an extension of time, to July 16, 2010, in which to identify the brand of GBCA used in the January 1999 scan. (Id.) On May 20, 2010, the Hospital provided Ms. Farrar's second affidavit for the purpose of identifying the brand of GBCA used in the January 1999 scan. Ms. Farrar averred, "During this MRA, Mr. Gatano would have been administered either Omniscan

or Magnevist. [The Hospital's] investigation into which of these two agents was used is ongoing." (Doc #: 35-11 at 3 (emphasis added).) On May 18, 2010, Plaintiff noticed the depositions of the Hospital's 30(b)(6) representative and Beverly Farrar to take place on June 3, 2010, and the deposition of the Hospital's GBCA supplier, McKesson Corp., on June 29, 2010 along with subpoenae. (Doc #: 34-5 at 9.) McKesson swiftly responded to the deposition notice and subpoena by providing a sworn statement indicating it did not keep records showing that it supplied any GBCA to the Hospital earlier than January 1999. (Doc #: 34-5 at 9.) In a terse email dated May 28, 2010, however, the Hospital's counsel responded:

> I would love to make all of your cases my priority, but I have a number of other responsibilities at my job. I am still trying to get a copy of the contract [for the purchase of GBCA] without giving up my first born child. I don't have a purchasing person to produce yet and it would do no good to depose Bev [Farrar]. As I have told you on a number of occasions, she is not going to give you what you want. That would be a waste of everyone's time. I am canceling the deps that you unilaterally scheduled, as I am not available. I will continue to try to get you what you need.

(Doc #: 35-16 at 2.) On July 12, 2010, Plaintiff's counsel contacted the Hospital's counsel to inquire about the results of the Hospital's investigation into the history of GBCA purchases prior to Mr. Gatano's 1999 scan. (Id. at 10.) The Hospital responded that records were kept for only seven years and there were no purchase records in the pharmacy department beyond 2001. (Id.) The Hospital stated that the pharmacy department had asked McKesson whether they had records of the Hospital's GBCA purchase orders and they did not. (Id.) On July 14, 2010, Plaintiff's counsel noticed videotaped depositions and served subpoenae on the Hospital and Farrar for July 30, 2010. (Id.) On July 22, however, the Hospital postponed the depositions due to the retention of new, outside counsel who was unavailable for the July 30 deposition, and would not be available for deposition until late August. (Id. at 11.) On August 20, 2010, the

-6-

Hospital's new counsel sent an email to Plaintiff's counsel stating that she had the opportunity to discuss Plaintiff's subpoenae with the Hospital and that "it is an impossible proposition for the people at [the Hospital] to assist you in identifying what contrast agents were used more than a decade ago." (Doc #: 34-5, at 12.)  On September 15, 2010, Plaintiff's counsel emailed the Hospital's counsel to propose new deposition dates and advised that the deposition would be noticed for October 1, 2010.  (Id.)  On September 20, 2010, the Hospital's counsel advised that her next availability for the depositions was October 13, 2010, and that she had been instructed to quash the subpoenae of Ms. Farrar and the Hospital.  (Id.)  On September 24, 2010, Plaintiff served notices and subpoenas for deposition on Ms. Farrar and the Hospital.  (Id.)  In October 2010, without filing an objection, a motion to quash or a motion for a protective order, the Hospital refused to produce Ms. Farrar, saying that she did not have any knowledge beyond what she had already presented in her two affidavits.  (Id.)  Rather, the Hospital's counsel advised that Mary McGrath would be produced in lieu of Ms. Farrar for deposition on October 13, 2010 as she was "the person most knowledgeable about the information being sought."  (Doc #: 34-5, at 13.)  Plaintiff's counsel reminded the Hospital's counsel of the separate subpoena for the deposition of Ms. Farrar and responded that Plaintiff would not release Ms. Farrar from that subpoena until she had been deposed.  (Id.)  On October 13, 2010, the Hospital produced Mary McGrath to respond to the 30(b)(6) notice of deposition and accompanying subpoena duces tecum.  (Id.)  The Court has reviewed the testimony of Ms. McGrath, the business manager for the Hospital's Department of Pharmacy.  The Court observes that, for the most part, Ms. McGrath was unable to answer any questions about product identification.  She testified that she researched product identification by contacting McKesson to see if it had any records dating

back to 1999 which would have identified the GBCA it sold to the Hospital in 1999.  As shown above, however, McKesson had already produced a sworn statement indicating that it did not keep records of GBCA supplies to the Hospital dating that far back.  (Doc #: 34-5 at 9.)  Despite the Hospital's refusal to produce Ms. Farrar for deposition, her investigation continued until, on November 10, 2010, she found patient treatment records archived digitally on a "PAC" system dating back to January 11, 1999.  On November 11, 2010, she provided to Plaintiff's counsel an affidavit concluding that it was more likely than not Omniscan that was used during Plaintiff's January 11, 1999 scan.

In reply, the GE Defendants argue that the Farrar Affidavit is unreliable as it conflicts with her earlier affidavit testimony, was obtained ex parte, and wholly contradicts the 30(b)(6) testimony of Mary McGrath.  (Doc #: 36.)

The Court has made clear that plaintiffs in this MDL should not be penalized by the failure of third parties to provide timely, relevant, and material product identification information to plaintiffs.  (Doc #: 34 at 7.)  Given the above undisputed facts, the Court finds that Plaintiff's counsel were not only diligent, but basically badgered the Hospital in their efforts to track down Plaintiff's GBCA scans and the identity of the products used.  The evidence shows that the person most knowledgeable about GBCA product identification was Ms. Farrar, not Ms. McGrath.  Farrar's averments are not inconsistent with McGrath's testimony because McGrath had little to no knowledge about GBCA product identification.  In addition, the Court finds that the averments in Ms. Farrar's third affidavit are not inconsistent with her previous affidavits.  In the first affidavit, she identified a GBCA-enhanced scan of Mr. Gatano taken on January 11, 1999.  In the second affidavit, she narrowed the product used to either Omniscan or Magnevist.

In the third affidavit, she identified Omniscan as the GBCA used in the January 11, 1999 scan. Finally, Farrar's recent averments do not contradict Dr. Siegelman's testimony that, at the time period in question, Omniscan was in fact the GBCA that would have been used unless a prior adverse reaction to Omniscan was known – in which case Magnevist would have been used.  (Id. citing Ex. D.)  Since there is no evidence that Plaintiff had an adverse reaction to Omniscan, the implications of Dr. Siegelman's testimony is that Omniscan was administered to Plaintiff on January 11, 1999.  (Id.)

In summary, the Court concludes that Plaintiff has provided sufficient, credible evidence that Omniscan was used in his January 11, 1999 MRA.  The Court also finds that dismissing the claims against GE at this time, given the evidence, would create a manifest injustice since this MRA appears to be a scan that preceded the late 1999 onset of Plaintiff's NSF symptoms.  (See Doc #: 34 at 4.)  The GE Defendants' attack on the credibility of Ms. Farrar and the facts underlying her testimony creates, at most, a disputed factual issue that must be resolved by the trier of fact.  Accordingly, the Court **DENIES** the GE Defendants' request to dismiss Jeffrey Gatano's claims against it .

**IT IS SO ORDERED.**

 */s/ Dan A. Polster     December 8, 2010*  
**Dan Aaron Polster**  
**United States District Judge**